105 P.3d 65 (2005)
STATE of Washington, Respondent,
v.
Howard H. HAGAR, Appellant.
No. 52809-2-I.
Court of Appeals of Washington, Division 1.
January 24, 2005.
*66 Susan F. Wilk, Washington Appellate Project, Seattle, WA, for Appellant.
Scott Allen Peterson, Attorney at Law, Seattle, WA, for Respondent.

PUBLISHED IN PART
COX, C.J.
Howard Hagar challenges the exceptional sentences imposed following his guilty plea to three counts of first degree theft, arguing that the sentences must be reversed in light of Blakely v. Washington.[1] Although Hagar stipulated to facts in his plea agreement that support the exceptional sentences, he contends Blakely provides a basis to argue that a mutual mistake underlies the plea agreement. Hagar argues that the mistake entitles him to resentencing within the standard range.
Generally, the remedy for a mutual mistake is to allow the defendant to choose either specific performance or withdrawal of the plea, unless there are compelling reasons to deny the defendant's choice.[2] Here, even assuming a mutual mistake occurred, there is no basis for specific performance. And Hagar expressly declines to have us set aside his plea. Because neither remedy applies, and Hagar's sentences are not otherwise unlawful, we affirm.
Based on evidence that Hagar embezzled nearly $500,000 from three real estate partnerships, the State charged him with 24 counts of first and second degree theft. Prior to trial, the parties negotiated a plea agreement in which Hagar agreed to plead guilty to three counts of first degree theft. The plea agreement further recited that the State would recommend an exceptional sentence.
In addition to stating, in writing and in his own words, why he was guilty of the three counts, Hagar also stipulated as follows:
In accordance with RCW 9.94A.530, the parties have stipulated that the following are real and material facts for purposes of this sentencing:
... The facts set forth in the certification(s) for determination of probable cause and prosecutor's summary.
... The facts set forth in ... Appendix C[.]
Appendix C stated with respect to the "real facts":
In addition to the facts set forth in the certificate of probable cause, Hagar entered into a partnership with Douglas & Patrick Obert. Hagar contributed his interest in the Block 60 partnership to the Hagar-Obert partnership. When the Block 60 properties sold, Hagar embezzled the money as described in the certificate of probable cause instead of distributing his share to Hagar-Obert. Douglas & Patrick Obert each lost their 1/3 share of this money.
The appendix further provided that [Hagar] "must agree to allow the court to consider the above-stated REAL FACTS at sentencing...."
The sentencing court found that Hagar had committed a major economic offense and imposed concurrent exceptional sentences of 30 months. These were above the standard *67 range sentences of 3 to 9 months for these crimes.
Hagar appealed.
While Hagar's appeal was pending, the United States Supreme Court decided Blakely v. Washington. The parties have filed supplemental briefs addressing Blakely and other issues related to this case.
Hagar contends his exceptional sentences are void because Blakely renders the SRA's exceptional sentence statutes facially invalid. We recently rejected the same argument in State v. Harris.[3] We adhere to that holding here.
Hagar next argues that his exceptional sentences are unlawful under Blakely because a judge, not a jury, found the facts supporting the sentences and did so without finding those facts beyond a reasonable doubt. The State responds that the sentences do not violate Blakely because Hagar stipulated to the facts supporting the sentences and thus waived his right to a jury. In making this argument, the State relies on the following passage in Blakely:
But nothing prevents a defendant from waiving his Apprendi[[4]] rights. When a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding. If appropriate waivers are procured, States may continue to offer judicial factfinding as a matter of course to all defendants who plead guilty.[[5]]
Hagar replies that his stipulation was not a knowing and intelligent waiver of his constitutional rights under Blakely because that case was not decided at the time of his plea. In short, Hagar contends that there was no valid waiver of his rights.
We need not resolve the conflicting arguments on these questions. Rather, we assume without deciding that Hagar's stipulation to real facts did not validly waive his Sixth Amendment rights under Blakely.[6]
We start with the observation that Hagar's stipulation to facts was an integral part of a plea agreement that he has not shown to be divisible. Both parties to the agreement received benefits as a part of a package that they negotiated and then presented to the court. Given the stipulation's integral role in the plea agreement, the stipulation and resulting sentence cannot be challenged apart from the agreement itself.[7]
The essence of Hagar's argument is that the plea agreement rested on a mutual mistake  that facts supporting an exceptional sentence need not be found by a jury or proven beyond a reasonable doubt.[8] Hagar contends the parties' mistake entitles him to resentencing within the standard range. We disagree.
When a plea agreement rests on a mutual mistake as to the direct consequences of a plea, the plea is involuntary and the defendant is entitled to choose either withdrawal of the plea or specific enforcement of the plea agreement.[9] Hagar contends that while his plea agreement was consistent with then existing law, it rested on a mutual mistake once Blakely announced that facts supporting an exceptional sentence had to be found by juries beyond a reasonable doubt. *68 Even if we accept the validity of that proposition, Hagar does not argue that the mistake concerned a direct consequence of his plea or that his plea was involuntary.[10]
Moreover, the remedy Hagar seeks is not available. Hagar expressly states that he does not want to withdraw his plea. Instead, he requests "specific performance" in the form of resentencing within the standard range. In general, specific performance is available when the prosecutor has breached the plea agreement, or the defendant has been misinformed regarding a direct consequence of the plea.[11] Here, the prosecutor performed as promised, and, as noted above, Hagar does not claim he was misinformed about a direct consequence of his plea.
Even if Hagar was entitled to specific performance, he cites no relevant authority supporting his claim that "specific performance" in these circumstances would require resentencing within the standard range. The cases he cites in support of resentencing  United States v. Barron[12] and In re Goodwin[13]  are distinguishable.
In Barron, a defendant who pled guilty to several offenses later moved to vacate the sentence on one offense. It was undisputed that a post-plea interpretation of the statute defining the offense had rendered the evidence supporting the conviction insufficient. A United States District Court judge denied the motion, holding that Barron's sole remedy was to withdraw his plea. On appeal, a unanimous panel of the Ninth Circuit Court of Appeals affirmed. Following a rehearing en banc, a divided court reversed. The majority emphasized that the defendant's action was brought under a statute authorizing vacation of an unlawful sentence. Because Barron's conviction was not authorized by law, the majority reasoned that he was entitled to vacate his sentence for that offense without upsetting the rest of his plea.[14]
Barron is inapplicable here for several reasons. First, it involved the interpretation of a federal statute relating specifically to the vacation of sentences. No similar statute is at issue here.
Second, the Barron majority's holding rested in large part on the fact that Barron was factually innocent and that his conviction was invalid. There is no argument here that Hagar's conviction is invalid.
Third, the Barron majority's analysis regarding the divisibility of plea agreements is at odds with our state supreme court's holding in State v. Turley.[15] As we have already explained in this opinion, there is no argument here that the plea agreement is divisible.
*69 In re Goodwin is of no help to Hagar. There, the defendant's guilty plea included a stipulation that the prosecutor's recitation of criminal history was correct. On collateral review by way of a personal restraint petition, Goodwin argued that he was entitled to resentencing because his criminal history erroneously included washed out juvenile offenses. In granting the petition and remanding for resentencing, the Goodwin court held that a factual sentencing error could be waived by stipulation, but a "legal error leading to an excessive sentence" could not.[16] The court expressly rejected the State's argument that because the error was part of a plea agreement on which the State had detrimentally relied, it should be regarded as a mutual mistake for which the usual remedy  withdrawal of the plea  applied. The court reiterated that "the erroneous portion of a sentence in excess of statutory authority must be reversed, and a plea agreement to the unlawful sentence does not bind the defendant."[17]
The state supreme court has since explained that Goodwin "turned on the fact that that defendant's sentence contained obvious errors"[18] and that its analysis applies only after a defendant demonstrates that a factual or legal error "exists within the four corners of his judgment and sentence."[19]
Unlike the error in Goodwin, the alleged error here does not appear on the face of the judgment and did not necessarily result in a sentence exceeding what the Legislature intended. Rather, the alleged error was procedural  imposition of an exceptional sentence without involving a jury to make certain factual determinations supporting the sentence. We see nothing in Goodwin supporting its extension to these facts.
We affirm the judgment and sentences.
The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions.
WE CONCUR: BECKER and GROSSE, JJ.
NOTES
[1] Blakely v. Washington, ___ U.S. ___, 124 S.Ct. 2531, 2536, 159 L.Ed.2d 403 (2004) (Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the maximum authorized by the verdict alone must be submitted to a jury and proved beyond a reasonable doubt.).
[2] State v. Miller, 110 Wash.2d 528, 535, 756 P.2d 122 (1988).
[3] 123 Wash.App. 906, 99 P.3d 902 (2004).
[4] Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).
[5] Blakely, 124 S.Ct. at 2541 (emphasis added) (citations omitted).
[6] See Harris, 99 P.3d at 908-09.
[7] See State v. Turley, 149 Wash.2d 395, 400-02, 69 P.3d 338 (2003) (plea agreements are contracts and "will be treated as indivisible, absent objective evidence of a contrary intent in the agreement."); United States v. Fotiades-Alexander, 331 F.Supp.2d 350, 354 (E.D.Penn.2004) ("defendant's argument about whether she voluntarily and intelligently `waived' her Blakely rights relates to the validity of her guilty plea rather than to the court's reliance on the facts admitted by the defendant").
[8] Although Hagar's briefs focus on the legality of his sentence, at oral argument he asserted that he was entitled to resentencing because the parties' agreement rested on a mutual mistake of law.
[9] See Miller, 110 Wash.2d at 531, 756 P.2d 122; State v. Walsh, 143 Wash.2d 1, 8, 17 P.3d 591 (2001); State v. Murphy, 119 Wash.App. 805, 806, 81 P.3d 122 (2002).
[10] We note there is authority for the proposition that post-plea changes in the law do not render a plea involuntary. Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) ("[A] voluntary plea of guilty intelligently made in light of then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise."). Several federal and state courts have cited Brady in rejecting challenges to guilty pleas based on claims they are invalid under Apprendi and Blakely. See e.g. Aragon v. Wilkinson, 209 Ariz. 61, 97 P.3d 886 (App.2004); People v. Beronich, 334 Ill.App.3d 536, 268 Ill.Dec. 399, 778 N.E.2d 385 (2002); United States v. Sanchez, 269 F.3d 1250, 1285 (11th Cir.2001); United States v. Reyes-Acosta, 334 F.Supp.2d 1077 (N.D.Ill.2004); United States v. Patterson, 292 F.3d 615, 625 n. 2 (9th Cir.2002); United States v. Rodriguez-Rodriguez, WL 2095673 (N.D.Ill.2004); but see United States v. Gutierrez Rodriguez, 288 F.3d 472 (2nd Cir.2002) ("Brady applies only to collateral attacks seeking to withdraw guilty pleas where the convictions had become final before the change in the law had occurred."). Because the parties in this case have not cited Brady and similar cases, we do not address them here.
[11] See generally Miller, 110 Wash.2d at 531-36, 756 P.2d 122; State v. Harrison, 148 Wash.2d 550, 557, 61 P.3d 1104 (2003); State v. Henderson, 99 Wash.App. 369, 993 P.2d 928 (2000); State v. E.A.J., 116 Wash.App. 777, 67 P.3d 518 (2003), review denied, 150 Wash.2d 1028, 82 P.3d 243 (2004); State v. Holgren, 106 Wash.App. 477, 481 n.2, 23 P.3d 1132 (2001).
[12] 172 F.3d 1153 (9th Cir.1999).
[13] 146 Wash.2d 861, 50 P.3d 618 (2002).
[14] Barron, 172 F.3d at 1159.
[15] Turley, 149 Wash.2d at 400, 69 P.3d 338 (holding that absent objective indications to the contrary, plea agreements involving multiple counts are indivisible and the remedy for a manifest injustice as to one count in an indivisible agreement is either withdrawal of the plea or specific performance).
[16] Goodwin, 146 Wash.2d at 874-76, 50 P.3d 618.
[17] Goodwin, 146 Wash.2d at 877, 50 P.3d 618.
[18] State v. Ross, 152 Wash.2d 220, 231, 95 P.3d 1225 (2004).
[19] Ross, 152 Wash.2d at 231, 95 P.3d 1225.